**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven Voss and Wendy Voss, as Co-Trustees of the Steven James Voss and Wendy Voss Living Trust dated February 19, 1999,<br><br>  Plaintiffs,<br><br>vs.<br><br>The United States of America (Bureau of Reclamation),<br><br>  Defendant.<br>_____<br>Steven Voss and Wendy Voss, as Co-Trustees of the Steven James Voss and Wendy Voss Living Trust dated February 19, 1999,<br><br>  Plaintiffs,<br><br>vs.<br><br>Salt River Project Agriculture Improvement and Power District, a municipal corporation; Salt River Valley Water Users' Association, an Arizona corporation,<br><br>  Defendants. | No. CV-06-2434-PHX-JAT<br><br>No. CV-06-2707-PHX-JAT<br><br>(Consolidated)<br><br>**ORDER** |

Pending before the Court are the Plaintiffs' Motion for Summary Judgment (Doc. #15), the United States of America's Cross Motion for Summary Judgment (Doc. #34), a Cross Motion for Summary Judgment (Doc. #38) by Defendants Salt River Project Agricultural Improvement and Power District ("SRP") and Salt River Valley Water Users' Association ("SRV"), and Plaintiffs' Motion for Leave to File Amended Complaint (Doc. #65).

**I. BACKGROUND**

This case arises from a dispute regarding the boundaries of the federal government's right-of-way on a parcel of land along the Arizona Canal. The current owners of the parcel, Plaintiffs Steven and Wendy Voss, as Co-Trustees of the Voss Trust, removed an existing fence located on what Defendants claim is the government's right-of-way and began construction of a new block wall on the same spot. Plaintiffs claim that the previous fence and the new wall are on their property and outside of the government's right of way. The property in dispute is a strip approximately 184 feet long and 20 feet wide.

Construction of the Arizona Canal began in the 1880s. The Arizona Canal and attendant rights of way are owned by the United States. (SRP and SRV's Statement of Additional Facts in Support of Response to Plaintiffs' Motion for Summary Judgment and Cross-motion for Summary Judgment (Doc. #39) p. 4 ¶1). Since 1949, SRP has operated the "power system" of the Reclamation Project and SRV has operated the irrigation and drainage system of the Project, which includes the canal.

In 1904, the United States patented land containing the disputed strip to the Saginaw and Manistee Lumber Co. The patent contained the following reservation, "And there is reserved from the lands hereby granted a right of way thereon for ditches and canals constructed by the authority of the United States." (Doc. #39 ¶46, Ex. V).

The Youngs, Plaintiffs' predecessors-in-interest, purchased a parcel containing the disputed strip sometime before 1975. In a letter dated November 11, 1971, SRP informed the Youngs that they could "encroach on the Arizona Canal right of way with a chain link

fence along the rear" of their property. (Doc. #39 Ex. H).[1] The letter further stated that if SRP needed to later relocate the fence, SRP would pay for the relocation.

In or about 1973, SRP placed angle irons marking the federal right of way in the vicinity of the property at issue. (Doc. #39 Ex. B ¶8). The angle irons were marked "SRP RW." The Millers purchased the parcel from the Youngs in June of 1975. (Doc. #39 Ex. O). Plaintiffs' property was part of a larger parcel owned by the Youngs and the Millers. The Millers subdivided their property into three parcels before selling Parcel B to the Vosses in 1998. (Doc. #39 Exs. O&P).

When SRP/SRV personnel noticed Plaintiffs' building of the permanent block wall in early 2005, they contacted the city of Scottsdale, and construction stopped. SRP, SRV, and Plaintiffs had several meetings to attempt to resolve the dispute. When the parties could not reach a resolution, Plaintiffs sued the United States on October 12, 2006 in this Court and sued SRP and SRV on the same day in Maricopa County Superior Court.

Plaintiffs initiated both cases to clear title to the disputed strip of land. All parties have moved for summary judgment. All Defendants argue that the statute of limitations on the quiet title action has run.

## II.   ANALYSIS AND CONCLUSION

### A.   Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, summary judgment is mandated, "...against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

---

[1] Plaintiffs object to this letter for lack of foundation because it is unsigned. The letter was contained in SRP's files. Plaintiffs themselves rely on letters found in Defendants' files in their motion for summary judgment. The Court will overrule the objection.

1     **B.**     **Quiet Title Act**

2     The Quiet Title Act (QTA), 28 U.S.C. §2409a, is the exclusive means by which a
3 party may challenge the United States's title to real property. *Block v. North Dakota*, 461
4 U.S. 273, 286 (1983). The QTA has a 12-year statute of limitations. *U.S. v. Beggerly*, 524
5 U.S. 38, 48 (1998). The 12-year period begins to run when the plaintiff *or* his predecessor
6 in interest knew or should have known of the claim of the United States. *Id.* (emphasis
7 added). The phrase "should have known" imparts a test of reasonableness. *State of*
8 *California v. Yuba Goldfields, Inc.*, 752 F.2d 393, 396 (9th Cir. 1985).

9     The QTA's statute of limitations is jurisdictional, *Grosz v. Andrus*, 556 F.2d 972, 975
10 (9th Cir. 1977), and Courts must strictly construe it, *Yuba*, 752 F.2d at 396. If the Plaintiffs'
11 cause of action accrued before October of 1994, because either they or their predecessors in
12 interest should have known about the government's claim to the right of way, then this Court
13 must dismiss for lack of subject matter jurisdiction. *Grosz*, 556 F.2d at 975.[2] Constructive
14 notice can serve as notice of the government's claim. *Yuba*, 752 F.2d at 396. The
15 government's interest does not need to be adverse to a plaintiff's interest. *Id.* at 397. Nor
16 does the government have to communicate its claim in clear and unambiguous terms. *Id.*

17     The Court finds that Plaintiffs' predecessors in interest, the Youngs and the Millers,
18 had either actual or constructive notice of the government's claim to disputed strip. Back in
19 1971, the Youngs received a letter giving them permission to maintain an "encroaching" non-
20 permanent fence on the exact location at issue in this suit. (Doc. # 39 Ex. H). Plaintiffs point
21 out that the letter came from SRP, not specifically from the federal government.

22     No evidence in the record indicates whether or not the Youngs actually knew that the
23 United States owned the canal right of way. But a reasonable property owner, upon learning
24 that someone claims to have the authority to tell him what he can and cannot do with his
25 property, would investigate. A simple search of the plot records would turn up the 1904

---

[2] Whenever it appears that a court lacks jurisdiction, the court must dismiss the action.
28 Fed. R. of Civ. Pro. 12(h)(3).

- 4 -

1  patent reserving the right of way to the federal government.  Or, the Youngs could have
2  contacted SRP to inquire as to its interest in their property.  What matters most is that the
3  Youngs knew they did not have quiet title to the disputed portion of the land.  *Chesney v.*
4  *U.S.*, 632 F.Supp 867, 870 (D. Arizona 1985). The Youngs could not bury their heads in the
5  sand as to the owner of the right of way.  *Id.*  (stating, "[Plaintiff] could not bury his head in
6  the sand . . . waiting for an adverse party to make a dramatic assertion of a claim.  It was
7  incumbent upon [plaintiff] to make some sort of inquiry or take some sort of action to
8  establish his right to the disputed land . . . .").

9        The Court finds that the Youngs had actual knowledge in the 1970s that someone
10 claimed a right of way for the exact location in dispute here.  A prudent inquiry would have
11 revealed that the United States owns the right of way.  The statute of limitations therefore
12 began to run at least when the Youngs received the letter.

13       The Court further finds that the Millers had constructive knowledge of the
14 government's claim to the right of way.  "Constructive and actual notice have the same
15 effect." *Neal v. Hunt*, 541 P.2d 559, 563 (Ariz. 1975).  Around 1973, SRP placed angle irons
16 marking the federal right of way in the vicinity of the property at issue.  (Doc. #39 Ex. B ¶8).
17 The Millers purchased the property in June of 1975.  (Doc. #39 Ex. O).  Plaintiffs argue that
18 no irons are actually on their parcel.  But the Millers owned a larger parcel that they
19 subdivided before selling Parcel B to Plaintiffs.  (Doc. #39 Ex. P).  The Plaintiffs do not
20 argue that there were no angle irons on the larger parcel.

21       Although the angle irons were marked "SRP RW," the record contains evidence that
22 Mr. Miller knew the government claimed the right of way.  Mr. Voss testified at his
23 deposition that he had taken notes of a meeting during which Mr. Miller had stated that a
24 *federal* pin angle was on Mr. Miller's lot when Mr. Miller bought the property (Doc. #39 Ex.
25 N)(emphasis added).  Plaintiffs have raised a hearsay objection to this testimony.

26       "'Hearsay' is a statement, other than one made by the declarant while testifying at the
27 trial or hearing, offered in evidence to prove the truth of the matter asserted." *U.S. v. Leo*
28 *Sure Chief*, 438 F.3d 920, 926 n.5 (9th Cir. 2006).  But the Court is not considering the

1 statement for the truth of the matter asserted therein – that the pins were in fact federal pins.
2 Rather, the statement indicates Mr. Miller's *belief* that the angle irons were federal pins,
3 which demonstrates his knowledge of the government's claim. Uncontroverted independent
4 evidence, the Declaration of John Morris (Doc. #39 Ex. B ¶8) and the record deed of transfer
5 from the Youngs to the Millers (Doc. #39 Ex. O), demonstrates that SRP placed the angle
6 irons on the larger parcel owned by the Youngs and the Millers around 1973 and that the
7 Millers did not purchase the property until 1975.

8 The Court holds that the Millers reasonably should have known of the government's
9 claim to the right of way when they purchased the larger parcel that contained the current
10 Parcel B in 1975. Angle irons were in place on the larger parcel by that time. Mr. Miller
11 believed the angle irons were "federal" angle irons. Even if Mr. Miller did not know the
12 angle irons were federal pins, again, a reasonable inquiry would have revealed the
13 government's claim to the right of way. When one has inquiry notice of a fact affecting
14 property, "he is chargeable with the knowledge which the inquiry, if made, would have
15 revealed . . . ." *Neal*, 541 P.2d at 563. The angle irons provided the Millers with notice of
16 the government's claim back in 1975, and the time allowed for bringing a quiet title action
17 has long since passed.

18 The survey map filed by SRP in 1977 also gave the Millers constructive notice of the
19 government's claim to the right of way. SRP recorded with Maricopa County a map showing
20 right-of-way dimensions encompassing the disputed strip of land. (Doc. #39 Ex. I). "Under
21 Arizona law, a recorded document stating its terms and purpose imparts constructive notice."
22 *Villas at Hidden Lakes Condo. Ass'n v. Geupel Constr. Co., Inc.*, 847 P.2d 117 121 (Ariz. Ct.
23 App. 1992); *see also Carley v. Lee*, 119 P.2d 236, 238 (Ariz. 1941)(document gives
24 constructive notice if it sufficiently informs third persons of the nature and substance of the
25 rights claimed under it). Although SRP filed the map, the map contains a legend stating,
26 "Said plot does not show and it is not the intention to show or refer to all rights of way and
27 rights possessed *by the United States of America* . . . ." (Doc. # 39 Ex. I)(emphasis added).
28 This legend clearly indicates the government's claim to the right of way. It does not matter

- 6 -

1  whether the government's claim is valid, only that the government claimed an interest. *State*
2  *of Nevada v. U.S.*, 731 F.2d 633, 635 (9th Cir. 1984).

3  The Court holds that the Youngs and Millers, Plaintiffs' predecessors in interest, either
4  knew, or as reasonable property owners, should have known of the government's claim to the
5  disputed strip of land back in the 1970s. The QTA's twelve-year statute of limitation accrues
6  when a plaintiff or his predecessors in interest knew or should have known of the
7  government's claim. 28 U.S.C. §2409a(g). The statute of limitations therefore ran long
8  before Plaintiffs filed their suit to quiet title to the disputed strip. The QTA claim is the only
9  federal claim in the case, and no diversity jurisdiction exists for the state claim against SRP
10 and SRV. The Court therefore lacks jurisdiction over this consolidated action. Although the
11 Defendants presented the statute of limitations issue in their cross motions for summary
12 judgment, this Order really operates as a dismissal pursuant to Federal Rule of Civil
13 Procedure 12(b)(h)(3).

### C.    Motion to Amend

15 Plaintiffs have filed a motion to amend their Complaint. The proposed amended
16 complaint would consolidate the claims against the United States and SRP and SRV into one
17 complaint and would add another state cause of action against SRP. Because nothing in the
18 proposed amended complaint would confer jurisdiction on this Court, the Court denies the
19 motion to amend as futile. *U.S. ex rel. Lee v. SmithKline Beecham Inc.*, 245 F.3d 1048, 1052
20 (9th Cir.2001) ( "Futility of an amendment can, by itself, justify the denial of a motion for
21 leave to amend.").

22 Accordingly,

23 IT IS ORDERED dismissing this consolidated action pursuant to 12(b)(h)(3) for lack
24 of subject matter jurisdiction.

25 IT IS FURTHER ORDERED granting Defendants' Cross Motions for Summary
26 Judgment (Doc. ## 34 & 38) to the extent the Court has dismissed the consolidated action for
27 lack of jurisdiction.

28 IT IS FURTHER ORDERED denying Plaintiffs' Motion for Summary Judgment (Doc.

1  # 15) and Motion for Leave to File Amended Complaint (Doc. # 65).

2  DATED this 6th day of August, 2007.

James A. Teilborg
United States District Judge